## *Logan vs. Steele's heirs.*

Error to the Fayette Circuit; JESSE BLEDSOE, Judge.

*Landlord and Tenant. Estoppel. Vendor and vendee. Decrees. Evidence. Conveyances. Merger of titles. Warranty.*

Judge MILLS delivered the Opinion of the Court.

LOGAN brought his ejectment against Moore as tenant in possession, and the heirs of Richard Steele entered themselves defendants, for, and with Moore their tenant.

On the trial, Logan gave in evidence a patent from the Commonwealth to Hugh Thompson, and a conveyance from Thompson to Lewis Craig, for 171 acres thereof, and a conveyance from Lewis Craig and others to himself, dated November 16th, 1799, embracing, not only the 171 acres aforesaid, but adjoining lands, amounting in the whole, to 520 acres; the patent of a certain Joseph M'Nitt, having interfered with the patent of Thompson, to the extent of the 171 acres, and Craig having united in himself both patents on that ground, before he conveyed to Logan, Thompson's patent being the oldest.

He next gave in evidence, an article of agreement between himself and Richard Steele, by the provisions of which, he sold 100 acres, part of the said 171 acres, to Steele, part of the price of which was paid, and the rest appeared to remain due. This article is dated, October 7th, 1801. Steele entered and received the possession from Logan under this purchase, and resided thereon till his death, having previously made a will, in which he devised the 100 acres to his widow for life; and from her it

EJECTMENT.

Case 14.

April 21.

Ejectment by Logan against Moore and Steele, his landlord.

Plaintiff's title.

LOGAN
vs.
STEELE'S
HEIRS

came to the possession of her children, who were the heirs of Richard Steele, who had placed the present tenant, Moore, in possession.

During the tenancy of Mrs. Steele, the widow, under the will of her late husband, she brought her bill in equity, against Logan for a conveyance, which he resisted, by showing that the purchase money was not paid, and her bill was ultimately discontinued. The foregoing were the facts and title on which Logan relied for a recovery.

Title of the defandant.

The defendants then gave in evidence, a deed of conveyance of the same land, dated the 14th day of June, 1803, from Logan to James M'Chord of Pennsylvania.

Record of the case of B. M'-Nitt vs. Logan, given in evidence.

They next gave in evidence the record of a suit in chancery, from the general court of this State, Barnard M'Nitt against said Logan, for the same land, in which the bill claimed it under Joseph M'Nitt's patent, because Barnard was the true heir of the original owner of the pre-emption, instead of Joseph, under whom Logan held, and because the patent issued wrongfully to said Joseph. This bill, the General Court dismissed, but on the appeal of B. M'Nitt the complainant, this court reversed that decree, and decided that B. M'Nitt was entitled to recover the land, and directed a decree in conformity thereto, in the General Court. This is the same opinion and decree of this court, reported in Littell's select cases, 60. After the return of the cause to the General Court, that court proceeded to effectuate the opinion and mandate of this, by preparatory steps and a final decree; from which, Logan, being dissatisfied, appealed, and the decree of the General Court was affirmed, and this is the case reported in Littell's select cases, 119. The decree so affirmed, directed Logan to convey about 540 acres, including the one hundred now in contest, to the said Barnard M'Nitt. Logan failed to convey, and the General Court, at their January term, 1816, appointed a commissioner to convey the land for him, and the commissioner, at the same term, reported a deed of conveyance, pursuant to the decree, and containing a warranty therein, on behalf of Logan, a-

gainst himself, and all claiming under him; and said conveyance was regularly acknowledged by the commissioner, and ordered to record by the court.

. The defendants next gave in evidence, the record of a suit in chancery of the Franklin circuit court, wherein the heirs of Richard Steele were complainants, and Barnard M'Nitt and said David Logan were defendants, in which said heirs claim a conveyance of the same land, either from M'Nitt or Logan, in whichsoever the legal title might be, by a virtue of a contract made between said Richard Steele their ancestor, and Barnard M'Nitt. In this suit, David Logan answered, resisting their claim, and against Barnard M'Nitt, the complainants, proceeded by publication, as a non-resident. At the trial of that cause the complainants dismissed their bill as to Logan, because, as the record says, it appeared that Logan, by the aforesaid commissioner, in the General Court, had conveyed his title to Barnard M'Nitt. But against M'Nitt they proceeded by default, and obtained a decree, directing him to convey the land to them. A commissioner was appointed, who conveyed the land from M'Nitt to them accordingly. They also gave other evidence, conducing to show, that Richard Steele in his lifetime, and his heirs since his death, at the expiration of the tenancy of their mother, held the land adversely under the claim of said Barnard M'Nitt.

*Case of Steele's heirs against B. M'Nitt and D Logan.*

To these records Logan made no other reply, than objecting to the admission of them, as improper and irrelevant evidence. But the court overruled the objection, and he excepted.

*Objection to the records and exception.*

To rebut the evidence of the conveyance, which he had made to M'Chord, in 1803, he gave in evidence a re-conveyance from M'Chord to himself, dated May 22nd, 1815.

*M'Cord's re-conveyance to Logan.*

On this evidence, the counsel for Logan moved the court to instruct the jury in substance, that if they found that Logan sold to, and put Richard Steele into possession, under the sale evidenced by the article of agreement aforesaid, and that Moore was tenant to his widow during her life, and after

*Instructions.*

LOGAN
vs.
STEELE'S
HEIRS

her death, to her and Richard Steele's heirs, and
that the patent to Thompson, and his conveyance to
Craig, and from Craig to Logan, covered the land,
the records offered by the defendants did not pre-
vent the lessor of the plaintiff from recovering.
But the court overruled the motion, and instructed
the jury, that the decree and the commissioner's deed,
made in pursuance thereof, did preclude the plain-
tiff from recovering.

The jury found for the defendants accordingly;
and Logan has appealed, and complains in this
court, that these decisions of the court below were
erroneous.

Question sta-
ted.

The first point that presents itself in reviewing
the decisions of the inferior court, is, the right of
Steele's heirs to question the title of Logan, as their
ancestor was a purchaser from, and took possesson
under him, by an executory contract.

Tenant can-
not gainsay
the landlord's
title.

It is a well settled general rule, that when the re-
lation of landlord and tenant has existed between
the plaintiff and defendant in an ejectment, the ten-
ant cannot gainsay the landlord's title, and set up an
outstanding title, existing either in himself or oth-
ers.

Where the
tenant ob-
tains a decree
against the
landlord, for
the title, he
is absolved
from his feal-
ty & may de-
ny the title he
entered under

But this rule has been held by this court flexible.
to circumstances, as in the case of Swan vs. Wilson,
1 Marshall, 99, where the tenant had gotten a de-
cree against the landlord, for the title to be convey-
ed to him on some existing equity between them.
This decree was held sufficient, so far to destroy
the relation of landlord and tenant, as to absolve
the tenant from his fealty, and permit him to show
a superior title out of the landlord.

One who ob-
tains posses-
sion under an
existing con-
tract, cannot
deny the title
of his vendor.

The same doctrine of estoppel to question the title
of the plaintiff on part of the defendant, has been
applied in this court, to a tenant holding by virtue
of an executory contract, who had received posses-
sion from the plaintiff. Such is the case of Connel-
ly's heirs vs. Chiles &c. 2 Marsh. 242. And al-
though this case has been complained of as obscure,

Blight's heirs
vs. Rochester

by the Supreme Court of the United States, in the
case of Bleight vs. Rochester, 7 Wheat. 550, yet

it is easily understood by us, and its principles admitted, and not overthrown by the case of Blight vs. Rochester.

This is a summary of the case. Hays sold to Connelly, gave his bond with surety to convey, and gave him the possession of the land. Connelly took possession of the land and enjoyed it long, no conveyance having been made, till long after the bond forfeited by a breach in not conveying. Connelly sued Hays, or rather his surety, on this breach, and recovered, and received the full value of the land. Hay's heirs brought their ejectment against Connelly, or his heirs, to regain from them the possession which Connelly had received from their ancestor, especially as Connelly had completely rescinded the contract and recovered the price. He was in this situation bound to restore the land. Connelly's heirs set up an outstanding title, which existed when their ancestor had bought of Hays, and under which Connelly had taken protection, after the recovery back of the value of the land from the surety of Hays. Connelly or his heirs were held to be estopped to set up this outstanding title, or to question the title of Hays, under which he had taken possession.

The question then is, does that case govern the present? We conceive not. There are circumstances in this case, which distinguish it from that, and authorize a different decision.

In the first case, Logan himself, had disaffirmed his contract with Steele, and destroyed the relation of vendor and vendee between them, by conveying the same land to M'Chord in 1803, which he had contracted to convey to Steele in 1800. From that moment Steele could treat him as a stranger, and was no longer bound to look to him for a title, or to hold the possession for, or under him. If Steele wished a conveyance, he must go to M'Chord, and not to Logan. If he wished to rescind the contract and restore the possession, he was bound to restore to M'Chord, who was then clothed with the rights of Logan. This fact, if no other existed, fully

*Margin notes:*

LOGAN vs. STEELE'S HEIRS.

Vendee by executory contract, after recovering at law for vendor's failure to convey, must surrender the possession; and cannot protect himself by an outstandnig title

Vendee in possession, whose vendor conveys to another in violation of his contract, is absolved, and may deny the title he entered under, and purchase and defend under any other claim.

Decree for
the title and
possession a-
gainst the
vendor by ar-
ticles, dis-
solves the re-
lation, and
absolves the
vendee in
possession
from all fur-
ther duties.

warranted the defendants here to question the title of Logan.

But if this conveyance of the land to M'Chord, was out of the question, and Logan had ever since his sale to Steele, continued to hold the title himself, there is another important circumstance here, which fully authorizes the defendants to question the title of Logan, and that is the decree of the general court, directing Logan to convey his title to Barnard M'Nitt. This was a real controversy, commenced in the year 1803. At what time the process was served on Logan, does not appear from the record, as the process is mislaid; but Logan answered, and the issue was made up in 1804, and in 1808 this court determined that B. M'Nitt was entitled to the land, and shortly afterwards the general court effectuated that determination. It is immaterial whether that suit was prosecuted in the name of M'Nitt for the benefit of Steele, as some parts of this record would seem to prove, or whether Steele was a stranger to it, and in no other manner privy, than as a purchaser by executory contract from Logan. It directed the title of Logan, instead of going to Steele, as Logan had covenanted it should, to go to M'Nitt, by virtue of a paramount equity, and whether rightfully or not, at this day, is wholly immaterial. From the date of that decree, as was well observed in argument, Steele was absolved from all duties to Logan, and the relation between the two as vendor and vendee was dissolved, and Steele was at liberty to say, that Logan was not the one to whom he was to look for title, or to whom he was bound to restore the possession, as that possession was decreed to another, by a judicial sentence obligatory on Logan.

Record of
such a decree
is competent
evidence in
an ejectment
by vendor vs.
vendee.

On the question whether these records ought to have been rejected, there can be no doubt that the record of M'Nitt vs. Logan was properly admitted. If Logan could give the act of a conveyance from Craig to himself in evidence, to operate on the rights of the defendants, they consequently could give in evidence, any conveyance from Logan to others, or a judicial determination directing Logan to convey

to others. If a conveyance from a stranger could give Logan a title, so a conveyance from him to a stranger, or directed to be made to a stranger by an irreversible decree, could remove the estoppel to question Logan's title.

As to the record of Steele's heirs against M'Nitt, there are various objections made to it in argument, which are formidable, and must have been decided, if the court below, after admitting it, had instructed the jury that it passed any title. But as the case is presented, there is no necessity of deciding, whether that record did, or did not, strip M'Nitt of the title, or whether Steele's heirs took nothing by it. For if it be conceded, (without deciding the question,) that this decree is void, as well as the title made under it by the commissioner, still it might be given in evidence to show how Steele claimed to hold. We have seen that he was at liberty, after certain events, to hold adversely to Logan, and to question his title, and this decree and deed, though void, might be used to prove that he actually did so. It was an attempt to get a title, on which the representatives of Steele might place confidence, although it deserved none. On the same principle, a void title may be given in evidence to show extent of claim, and that the possession is adverse when the statute of limitations is concerned, and length of possession gives title, though the deed does not, and the statute operates as an estoppel to question the validity of the deed. Indeed, to sanction such titles is the object of the act For he that has a valid title needs to bar no protect him.

The remaining question is, the effect of those records, as the court below decided that they were conclusive against the plaintiff.

We perceive no objection to this decision. The decree and the commissioner's deed, which seems to have been made in conformity thereto, were documents of a high grade of evidence, and on which the court could decide. The conveyance by the commissioner ought to be construed to do what Logan himself ought to have done, in obedience to the decree, as the act of the commissioner is by a stat-

---

*Margin notes:*

LOGAN vs. STEELE'S HEIRS.

*Void decree and deed may be given in evidence to prove how a party held and the extent of his claim.*

*Effect of the conveyance by a commissioner under a decree is the same as of deed made by the party according to the decree.*

LOGAN
vs.
STEELE'S
HEIRS

ute, the substitute for his own deed. Giving it this construction, it was conclusive that Logan had no title, and therefore, could not recover, and this is what we have seen the defendants were permitted to show, if they could.

**When two or more titles unite in one person, they are merged, and his subsequent conveyance of one passes all**

It is said that the decree of M'Nitt vs. Logan, is for the claim of Joseph M'Nitt only, and therefore, cannot affect the claim of Thompson, which Logan also held. It is true, that the equity set out, and the decree obtained against him, is a certain decree for the title or patent of Joseph M'Nitt, and there is no intimation either in bill or answer, that Logan had acquired any other title to the ground. But this can make no possible difference. The moment these two titles or claims of Joseph M'Nitt and Thompson, were united in the person of Logan, one merged in the other, and we are acquainted with no process of separation, by which they could be disunited—how he could convey one and keep the other, and the conveyance under the decree would consequently take both.

**Decree and conveyance by a commissioner, has the effect to pass all the titles the party had, tho' not sanctioned in the suit.**

The existence of another and superior title by virtue of which he held the land, might have been a good defence for him against the suit of M'Nitt, if he had set it up. But as he did not do so, it matters not how many other claims he may have acquired, or how strong or valid they may be; they would all pass by the decree and the conveyance in pursuance thereof. For a party cannot be permitted, in a case of that character, to try one defence after another, in a new controversy on each. On that hypothesis, controversies of this character would be endless, and the doctrine that *res adjudicata* is conclusive between the parties on the same subject matter, would fall to the ground.

**Commissioner's deeds pass all the title the party has at the time—and a warranty in such deed, directed by the**

But it is contended that, as Logan had conveyed the land to M'Chord, before there is any evidence *litis pendentis*, between Logan and Barnard M'Nitt, as the conveyance of Logan to M'Chord bears date before the filing of M'Nitt's bill, and that as M'Chord was not party to that suit, his rights, or the title which he held, could not be prejudiced by that suit. This may be correct, if M'Chord was now the

plaintiff. B. M'Nitt may not have succeeded by the decree, in recovering any part of this 100 acres, and yet the decree and conveyance of M'Nitt be conclusive against *him*, in this action. It must be remembered that the decree directed him to convey, with warranty against all claiming under him, and the deed executed by the commissioner, is as broad in its warranty as the decree. M'Chord, before the commissioner executed this deed, had re-conveyed to Logan, and of course, the title gotten from M'Chord, which was hitherto unaffected by M'Nitt's decree, passed by the deed of the commissioner, as really, as if Logan had executed the deed himself in obedience to this decree. His warranty will still stand in his way, even if he should acquire many subsequent titles. He would be estopped to assert them against his warranty, which binds him to let the land alone till that warranty is released or removed.

There is, therefore, no error in the judgment of the court below, and it must be affirmed with costs.

*Wickliffe*, for appellant; *Haggin, Depew* and *Loughborough*, for appellees.

<div style="margin-left:auto">

LOGAN
vs.
STEELE'S
HEIRS.

decree, operates to pass to the grantee the benefit of all title the party may afterwards acquire.